**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

George Alan Kelly,

        Plaintiff,

v.

County of Santa Cruz, et al.,

        Defendants.

No. CV-25-00040-TUC-RM

**ORDER**

Pending before the Court are Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Santa Cruz County Sheriff David Hathaway, Detective Jorge Ainza, Detective Mario Barba, Detective Joseph Bunting, Deputy Cristobal Castaneda, Sergeant Alfonso Flores, Sergeant Omar Rodriguez, Sergeant Lluvia Garcia, Commander John Marquez, and Deputy Rafael Lopez ("Officer Defendants") (Doc. 28); and Defendants Santa Cruz County and Santa Cruz County Attorney George Silva (Doc. 30).  Also pending is Plaintiff's Motion to Amend Response to Motions to Dismiss.  (Doc. 40.)

## I.    Plaintiff's Complaint

Plaintiff alleges the following in his Complaint.  In approximately 2002, Plaintiff and his wife purchased a ranch located in Santa Cruz County, approximately two miles from the United States-Mexico border.  (Doc. 1 at 7 ¶ 29.)  They built a home on the property and moved there in 2009.  (*Id.*)  The border wall south of Nogales, Arizona stops at Plaintiff's ranch, making the ranch a focal point for illegal immigrants and drug

1   traffickers. (*Id.* at 6-7 ¶ 24.) In recent years, an increasing number of drug mules have

2   crossed over Plaintiff's ranch, traveling in large groups with guns. (*Id.* at 8 ¶ 32.) Plaintiff

3   began carrying a handgun and keeping a rifle in his home to protect himself and his wife.

4   (*Id.* at 8-9 ¶ 34.)

5          On January 30, 2023, Plaintiff and his wife were on their property when they saw a

6   group of men with large backpacks and guns. (*Id.* at 9 ¶¶ 36-37.) While they were inside

7   their home, Plaintiff heard a gunshot outside. (*Id.* at 9 ¶ 37.) Plaintiff told his wife to get

8   down and then took his rifle to the back patio and fired approximately eight shots into the

9   air to scare the group off his property. (*Id.* at 9 ¶¶ 37-38.) Plaintiff then called 911 and the

10  Border Patrol. (*Id.* at 9-10 ¶ 39.) A Border Patrol agent and four deputies from the Santa

11  Cruz County sheriff's department arrived and walked the property, along with Plaintiff and

12  his dogs. (*Id.*) They did not see anyone on the property, and the officers left. (*Id.*) Several

13  hours later, Plaintiff's dogs alerted to something on the property, and Plaintiff discovered

14  the deceased body of Mr. Buitimea. (*Id.* at 10 ¶¶ 40-41.) The body was located in an area

15  that Plaintiff and the officers had walked through earlier without seeing anything. (*Id.* at

16  9-10 ¶ 39.) Mr. Buitimea was dressed in camouflage and had a radio; an empty, unzipped

17  backpack that was pulled over his head; and an empty, unzipped fanny pack. (*Id.* at 10 ¶

18  42.) Upon finding the body, Plaintiff called 911 and the Border Patrol. (*Id.* at 10 ¶ 43.)

19  Santa Cruz County attorneys and sheriff deputies arrived and began to question Plaintiff

20  and his wife. (*Id.* at 10-11 ¶¶ 43-46.) Plaintiff told the deputies what he had seen earlier

21  in the day and about firing shots from his rifle into the air from his back patio. (*Id.* at 10 ¶

22  45.) Plaintiff's wife told deputies the same version of events. (*Id.* at 11 ¶ 46.) Within

23  minutes, the deputies arrested Plaintiff for first-degree murder. (*Id.* at 11 ¶ 47.) He was

24  handcuffed, taken to the sheriff's department, and booked. (*Id.* at 11 ¶¶ 47-48.)

25         Plaintiff was held in jail for 23 days, until he could pay a $1 million bond. (*Id.* at

26  14-15 ¶¶ 61-62.) In jail, he was placed in general population "despite the obvious dangers

27  and repeated threats to his life." (*Id.* at 14-15 ¶ 61.) He was denied necessary medication

28  and, when given medication, was denied water with which to swallow the medication. (*Id.*)

Despite a severe back condition, he was denied a mattress and pillow. (*Id.*) When he complained about the conditions of his confinement, detention officers ignored his complaints and laughed at him. (*Id.*) Detention officers told him to put his complaints in writing and, when he did so, tore up the written complaint in front of him. (*Id.*) When Plaintiff was eventually released, he was released without his clothing in freezing temperatures. (*Id.*) Commander John Marquez was the detention officer in charge of Plaintiff's treatment in jail. (*Id.*)

On February 2, 2023, Plaintiff was formally charged with first-degree murder. (*Id.* at 12 ¶ 52.) The complaint was changed to second-degree murder on or about February 23, 2023. (*Id.*) Sheriff Hathaway publicly labeled Plaintiff as a racist, extremist vigilante. (*Id.* at 15 ¶ 63.)

At a probable cause hearing on February 24, 2023, County Attorney Kim Hunley knowingly used fabricated evidence and perjured testimony from "a supposed eyewitness" identified as D.R.R. (*Id.* at 18-19 ¶¶ 66-68.) D.R.R.'s testimony "was so ridiculous that it was obviously false." (*Id.* at 18 ¶ 66.) At Plaintiff's trial, held from March 22, 2024, to April 19, 2024, the prosecution again presented D.R.R.'s fabricated testimony. (*Id.* at 19 ¶ 73.) The jury was unable to reach a verdict, resulting in a mistrial. (*Id.*) Following the mistrial, Defendants requested the case be dismissed without prejudice, but the court dismissed it with prejudice in the interest of justice on July 9, 2024. (*Id.* at 20 ¶ 74.)

Plaintiff alleges that all named Defendants were involved in the decision to arrest him, and that Defendants never had probable cause to arrest, detain, charge, or prosecute him for first- or second-degree murder. (*Id.* at 11-14 ¶¶ 50, 52-59.) Plaintiff contends that the prosecution was based on Defendants' bias against ranchers who did not accept the Sheriff's view on immigration. (*Id.* at 14 ¶ 60.) Specifically, Santa Cruz County Sheriff Hathaway denied that there was a border crisis and decried ranchers who claimed there was. (*Id.* at 6 ¶ 22.) Defendants prosecuted Plaintiff to create an example for other ranchers who were complaining about the illegal immigration and drug trafficking crisis they were experiencing on their properties. (*Id.* at 14 ¶ 60.)

In Count One of his Complaint, Plaintiff asserts claims under 42 U.S.C. § 1983 against all Defendants for false arrest, unlawful seizure, and unlawful prosecution. (*Id.* at 21 ¶ 78-82.) In Count Two, Plaintiff asserts a claim against all Defendants under § 1983 for conspiracy to violate Plaintiff's right to be free from false arrest, unlawful seizure, and unlawful prosecution. (*Id.* at 22 ¶¶ 83-88.) In Count Three, Plaintiff asserts a claim for violation of his due process right to be free from punishment as a pretrial detainee. (*Id.* at 23 ¶¶ 89-93.) In Count Four, Plaintiff asserts a municipal liability claim against Santa Cruz County pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (*Id.* at 24 ¶¶ 94-97.) Plaintiff seeks compensatory and exemplary damages. (*Id.* at 25-26 ¶¶ 99-101.)

## II.    Motion to Amend Response

After Defendants' Motions to Dismiss were fully briefed, Plaintiff moved for leave to amend his Response to the Motions to Dismiss, purportedly to correct "some factual inaccuracies and some typographical errors." (Doc. 40.) In the Motion to Amend, Plaintiff states that he "reached out to Defendants to see if they oppose the motion" but that he did not receive a response. (*Id.*) Even though this Court has specifically notified Plaintiff of the correct procedures for filing proposed documents under Section II(H) of the District of Arizona Case Management/Electronic Case Filing Administrative Policies and Procedures Manual ("CM/ECF Manual") (*see* Doc. 37), Plaintiff filed his Amended Response concurrently with the Motion to Amend (Doc. 41), instead of lodging it as a proposed document as required by Section II(H) of the CM/ECF Manual. Plaintiff did not file a redlined copy of the Amended Response, nor does he identify the changes made.

Defendants filed Responses in opposition to Plaintiff's Motion to Amend, averring that they never received any communication about the Motion to Amend, and arguing that the Amended Response is improper and goes far beyond fixing minor errors, instead altering facts underlying the Rule 12(b)(6) briefing and adding new allegations. (Docs. 42, 43.) Plaintiff did not file a reply in support of the Motion to Amend, and the time for doing so has expired.

Plaintiff's Amended Response includes numerous alterations to factual allegations contained within Plaintiff's Complaint and his original Response. For example, the Amended Response adds a factual allegation that a member of the group that Plaintiff saw on his property turned a rifle on Plaintiff before Plaintiff fired shots into the air. (*Compare* Doc. 35 at 5, *with* Doc. 41 at 5.) The Complaint does not include this allegation. (*See* Doc. 1.) The Amended Response also adds an allegation that the group continued across Plaintiff's property toward a barn after Plaintiff fired shots into the air. (*Compare* Doc. 35 at 5, *with* Doc. 41 at 5.) Again, the Complaint does not include this allegation. (*See* Doc. 1.) The Amended Response deletes the allegation that Plaintiff told deputies about using a rifle to fire into the air from his back patio; this allegation appears in Plaintiff's Complaint and the original Response. (*Compare* Doc. 1 at 10 ¶ 45, *and* Doc. 35 at 6, *with* Doc. 41 at 6.) The Amended Response adds an allegation that Detective Ainza made false statements in Plaintiff's booking form, even though the Complaint does not include this allegation. (*Compare* Doc. 1, *and* Doc. 35 at 7, *with* Doc. 41 at 7.) Furthermore, the Amended Response includes additional allegations regarding testimony at Plaintiff's probable cause hearing. (*Compare* Doc. 35 at 10, *with* Doc. 41 at 9-10.)

Plaintiff has not established why he should be allowed to amend his Response—after Defendants' Motions to Dismiss had already been fully briefed—to include factual allegations different than those that appear in the Complaint. The Court will accordingly deny Plaintiff's Motion to Amend. Because Plaintiff's Amended Response was filed without leave of Court and in violation of Section II(H) of the CM/ECF Manual, the Court will strike the Amended Response from the docket. *See* LRCiv 7.2(m)(1).

### III.    Motions to Dismiss

Defendants ask the Court to dismiss Plaintiff's Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Docs. 28, 30.)

#### A.    Legal Standard

Dismissal of a complaint, or any claim within it, for failure to state a claim under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory or the absence

of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint need not include "detailed factual allegations," it must contain more than labels, conclusions, "and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

In evaluating a Rule 12(b)(6) motion to dismiss, the court must take as true all well-pleaded factual allegations of the complaint and construe them in the light most favorable to the nonmovant. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, the court need not accept as true legal conclusions that are couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A court generally cannot consider evidence outside the pleadings in ruling on a Rule 12(b)(6) motion, but the Court may consider "certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).

**B. Discussion**

The Officer Defendants argue that Plaintiff's § 1983 claims for false arrest, unlawful imprisonment, unlawful prosecution, and conspiracy are barred by the doctrine of collateral estoppel because the issue of probable cause to charge and hold Plaintiff was litigated at the February 24, 2023 probable cause hearing in state court. (Doc. 28 at 1-2. 10-14.) The Officer Defendants further argue that, even if the state-court probable cause finding is not given preclusive effect, there was probable cause for Plaintiff's arrest and prosecution, and the Officer Defendants are entitled to qualified immunity. (*Id.* at 2, 14-17.) Commander

1    Marquez argues that the conditions of confinement claim asserted against him must be
2    dismissed because Plaintiff does not allege that he personally participated in the challenged
3    conduct, acted with deliberate indifference, or disregarded a substantial risk of serious
4    harm. (*Id.* at 17.)

5        County Attorney Silva argues that the claims against him must be dismissed because
6    Plaintiff's Complaint does not allege that he personally participated in the purported
7    constitutional violations, and because he is entitled to absolute prosecutorial immunity.
8    (Doc. 30 at 8-10.) Silva and Santa Cruz County argue that Plaintiff's Complaint fails to
9    state a claim for malicious prosecution because Plaintiff cannot show a lack of probable
10   cause and he does not plead facts showing malice or a purpose to deprive him of a federal
11   constitutional right. (*Id.* at 10-14.) Silva and Santa Cruz County further argue that
12   Plaintiff's conspiracy claim fails for lack of an underlying § 1983 violation, for lack of
13   class-based discriminatory animus, and due to the intracorporate conspiracy doctrine. (*Id.*
14   at 14-15.) Finally, Santa Cruz County argues that Plaintiff fails to state a *Monell* claim
15   because the Complaint includes only conclusory assertions of a custom or policy. (*Id.* at
16   15-16.)

17        **1.    Probable Cause**

18        To state a claim on which relief can be granted under § 1983, Plaintiff must plausibly
19   allege that Defendants committed the challenged conduct while acting under color of state
20   law, and that the conduct deprived Plaintiff of a constitutional right. *Balistreri v. Pacifica*
21   *Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To state a constitutional claim for false
22   arrest, Plaintiff's factual allegations must plausibly show that Defendants were personally
23   involved in the arrest or decision to arrest Plaintiff, and the arrest was without probable
24   cause. *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998); *see also*
25   *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 918 (9th Cir. 2012). To state a constitutional claim
26   for malicious prosecution, Plaintiff's factual allegations must plausibly establish the state
27   common law elements of malicious prosecution: (1) "a criminal prosecution," (2) "that
28   terminates in favor of [the] plaintiff," (3) "with defendants as prosecutors," (4) "actuated

by malice," (5) without probable cause[,]" and (6) "causing damages." *Cullison v. City of Peoria*, 584 P.2d 1156, 1160 (Ariz. 1978); *see also Mills v. City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019) ("Federal courts rely on state common law for elements of malicious prosecution."). Furthermore, Plaintiff must plausibly allege that Defendants prosecuted him "for the purpose of denying [him] equal protection or another specific constitutional right." *Lacey*, 693 F.3d at 919.

The existence of probable cause is an absolute defense to false arrest, false imprisonment, and malicious prosecution claims. *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015) (false arrest and malicious prosecution); *Cota v. Penzone*, No. CV-18-02535-PHX-RM, 2019 WL 415703, at *5 (D. Ariz. Feb. 1, 2019) (false arrest and false imprisonment). Absent an underlying constitutional violation, a plaintiff cannot plausibly allege a conspiracy claim under § 1983 or a claim for municipal liability under *Monell*. *See Lacey*, 693 F.3d at 935 ("Conspiracy is not itself a constitutional tort under § 1983," and it "does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation"); *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (no *Monell* liability absent an underlying constitutional injury); *Hart v. Parks*, 450 F.3d 1059, 1069, 1071 (9th Cir. 2006) (§ 1983 conspiracy claims and *Monell* claims fail absent underlying constitutional violation). Accordingly, the existence of probable cause for Plaintiff's arrest and prosecution is fatal to Counts One, Two, and Four of the Complaint.

### a. Issue Preclusion

The state court twice found probable cause for Plaintiff's criminal prosecution, first during Plaintiff's February 24, 2023 preliminary hearing (Doc. 28-2; Doc. 30-2 at 2-219), and then again during a May 17, 2023 review of the preliminary hearing probable cause finding (Doc. 30-2 at 220 (non-electronically filed video recording).) The state court found probable cause for Plaintiff's arrest during an August 11, 2023 hearing on a suppression motion. (Doc. 30-2 at 221 (non-electronically filed video recording).)[1] Defendants argue

---

[1] The Court takes judicial notice of the existence of the state court's rulings. *See* Fed. R. Evid. 201; *Freeman v. Ethicon, Inc.*, 619 F. Supp. 3d 998, 1002 (C.D. Cal. 2022) (court

that the state-court probable cause findings are entitled to preclusive effect in this action. (Doc. 28 at 13-14; Doc. 30 at 12-13.)  Plaintiff contends that the state-court findings are "prima facie evidence of probable cause" but "not conclusive," and that they do not preclude Plaintiff's claims because they were "based upon known fabricated evidence and perjury," namely purportedly false testimony by eyewitness D.R.R.  (Doc. 35 at 13-15.) Plaintiff further argues that issue preclusion does not apply because "there was additional evidence at the preliminary hearing from when the arrest was made."  (*Id.* at 15.)

The doctrine of "[i]ssue preclusion, also known as collateral estoppel, bars the relitigation of issues actually adjudicated in previous litigation." *Janjua v. Neufeld*, 933 F.3d 1061, 1065 (9th Cir. 2019) (internal quotation marks omitted).  State law governs "the application of collateral estoppel to a state court judgment in a federal civil rights action." *Mills*, 921 F.3d at 1169; *see also Allen v. McCurry*, 449 U.S. 90, 96, 105 (1980) (federal courts "give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so" (citing 28 U.S.C. § 1738)).  In Arizona, issue preclusion applies when (1) an issue or fact "was actually litigated in a previous suit," (2) "a final judgment was entered," (3) "the party against whom the doctrine is to be invoked had a full opportunity to litigate the matter and actually did litigate it," and (4) the issue or fact "was essential to the prior judgment." *Crosby-Garbotz v. Fell in re Pima Cnty.*, 434 P.3d 143, 146 (Ariz. 2019).[2]  The parties do not cite, and this Court has not located, any Arizona Supreme Court or Arizona Court of Appeals decision addressing whether a probable cause finding made at a criminal preliminary hearing is entitled to preclusive effect in a later civil action.

---

may take judicial notice of public records from other proceedings in determining the applicability of issue preclusion).

[2] In their Reply, Santa Cruz County and Silva rely on *Martinez v. United States*, 997 F.3d 867 (9th Cir. 2021), for the contention that "[a] finding of probable cause at a preliminary hearing is only reviewable in a subsequent civil proceeding when the plaintiff argues that the officers engaged in judicial deception."  (Doc. 38 at 3.)  Defendants did not raise this specific contention or cite to *Martinez* in their Motions to Dismiss, and the argument accordingly has not been fully or adequately briefed.  New issues generally cannot be raised for the first time in a reply brief.  *Coos Cnty. Bd. of Cnty. Comm'rs v. Kempthorne*, 531 F.3d 792, 812 n.16 (9th Cir. 2008).  Furthermore, *Martinez* did not specifically analyze or address Arizona law on issue preclusion.

Plaintiff relies on *Wige v. City of Los Angeles* to argue that issue preclusion is inapplicable if additional evidence not known at the time of arrest was presented during the preliminary hearing, or if the preliminary hearing probable cause finding was based on fabricated evidence. (Doc. 35 at 15.) In *Wige*, the Ninth Circuit found that the identity-of-issues requirement of issue preclusion under California law is generally satisfied when a court is "asked to give preclusive effect to preliminary hearing probable cause findings in subsequent civil actions for false arrest and malicious prosecution." 713 F.3d 1183, 1185 (9th Cir. 2013). However, the issue of probable cause litigated during a preliminary hearing is not identical to the issue of probable cause for purposes of a false arrest claim if additional evidence unknown to officers at the time of the arrest was presented during the preliminary hearing. *Id.* at 1186. Furthermore, the identity-of-issues requirement is not met if fabricated evidence was presented at the preliminary hearing. *Id.*

Although *Wige* applied California law on issue preclusion, the limitations expressed in *Wige* are likely consistent with Arizona law. *Cf. Reams v. City of Tucson*, 701 P.2d 598, 601-02 (Ariz. App. 1985) (finding evidence of an indictment irrelevant to issue of whether probable cause existed for the plaintiff's arrest, because a false arrest claim hinges upon "the facts as they existed at the time of the arrest," whereas an indictment may be predicated upon evidence developed later); *see also* Restatement (2d) of Torts § 663(2) & cmt. to § 663(2) (the commitment of an accused to stand trial by a magistrate upon a preliminary hearing "is evidence that the person initiating the proceedings had probable cause," but the court should consider whether false testimony was presented to or material evidence withheld from the magistrate); *Webster v. Culbertson*, 761 P.2d 1063, 1066 (Ariz. 1988) ("In the absence of law to the contrary, Arizona follows the Restatement."). But even if the issue of probable cause for Plaintiff's arrest and prosecution was not actually litigated during Plaintiff's preliminary hearing for purposes of issue preclusion, due to the presentation of allegedly false testimony by D.R.R. and the presentation of additional evidence not known at the time of the arrest, Plaintiff fails to address the additional probable cause findings made during his state-court criminal proceedings. Specifically, in

reviewing the preliminary hearing probable cause finding, the state trial court found probable cause for Plaintiff's prosecution even when disregarding D.R.R.'s testimony. (Doc. 30-2 at 220 (non-electronically filed video recording).)  Furthermore, in ruling on Plaintiff's suppression motion, the state trial court found probable cause for Plaintiff's arrest based solely on the information known to officers at the time of the arrest.  (Doc. 30-2 at 221 (non-electronically filed video recording).)  Plaintiff was represented by counsel during the state criminal proceedings, and he had a full and fair opportunity to litigate the issue of probable cause for his arrest and prosecution.

Accordingly, it appears that at least some of the requirements for the application of issue preclusion under Arizona law are satisfied.  However, Defendants do not adequately address all of the Arizona law requirements for issue preclusion.  Specifically, Defendants do not adequately address whether Plaintiff's criminal proceedings—which terminated upon motion of the prosecutor—resulted in a final judgment for purposes of issue preclusion under Arizona law, nor do Defendants adequately address whether the probable cause findings were essential to the criminal judgment.  In *State v. Greenberg*, the Arizona Court of Appeals held that "[a]n interlocutory suppression order is not final for purposes of collateral estoppel."  343 P.3d 462, 469 (Ariz. App. 2015); *see also State v. Young*, 552 P.3d 527, 534 (Ariz. App. 2024) (same).  The court further found that a criminal case that was dismissed without prejudice on motion of the prosecution did not result in a judgment to which collateral estoppel could attach, because a judgment under Arizona law is defined as a court's adjudication, based on a jury verdict, court verdict, or plea, that a defendant is guilty or not guilty.  *Greenberg*, 343 P.3d at 465, 469-70; *see also Young*, 552 P.3d at 532, 534 (same); Ariz. R. Crim. P. 26.1(b) ("'Judgment' means the court's adjudication that the defendant is guilty or not guilty based on the jury's or the court's verdict, or the defendant's plea").  Although Plaintiff's criminal case was dismissed with prejudice rather than without prejudice, it was similarly dismissed on the prosecution's motion, and the dismissal was not based on an adjudication that Plaintiff was guilty or not guilty.

Because Defendants have not conclusively shown that all requirements of issue

1  preclusion under Arizona law are satisfied, the Court declines to dismiss Plaintiff's claims

2  on the grounds that the state court's probable cause findings are entitled to preclusive

3  effect.[3]

4  **b. Sufficiency of Allegations Regarding Lack of Probable Cause**

5      Even if the state-court findings of probable cause are not entitled to preclusive

6  effect, Plaintiff's Complaint does not plausibly allege a lack of probable cause for his arrest

7  and prosecution.  Probable cause "is a fluid concept" that "deals with probabilities and

8  depends on the totality of the circumstances."  *District of Columbia v. Wesby*, 583 U.S. 48,

9  57 (2018) (internal quotation marks omitted).  It "is not a high bar," and "requires only a

10  probability or substantial chance of criminal activity[.]"  *Id.* (internal quotation marks

11  omitted).

12      "Probable cause to arrest exists when officers have knowledge or reasonably

13  trustworthy information sufficient to lead a person of reasonable caution to believe that an

14  offense has been or is being committed by the person being arrested."  *United States v.*

15  *Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007).  The arresting officer's "subjective reason for

16  making the arrest need not be the criminal offense as to which the known facts provide

17  probable cause."  *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).  *Id.* at 153.  "Because

18  probable cause is an objective standard, an arrest is lawful if the officer had probable cause

19  to arrest for any offense, not just the offense cited at the time of arrest or booking."  *Wesby*,

20  583 U.S. at 54 n.2.

21      Plaintiff contends that Defendants needed to "have facts and circumstances within

22  their knowledge on all of" the elements of first-degree murder, including premeditation, in

23  order for his arrest to be supported by probable cause.  (Doc. 35 at 14.)  But Defendants

24  merely needed to have probable cause to arrest Plaintiff for any offense.  *See Wesby*, 583

25  U.S. at 54 n.2.  Plaintiff's Complaint alleges that, at the time of his arrest, a dead body had

26  been discovered on his property, and he had told officers that, earlier in the day, he had

27  fired multiple shots from his rifle in order to scare a group of individuals he had observed

28

---

[3] This holding does not preclude Defendants from re-asserting issue preclusion as a basis for dismissing claims asserted in any amended complaint.

on his property. (Doc. 1 at 10-11 ¶¶ 40-41, 43-47.) Based on these circumstances, officers had probable cause to arrest Plaintiff for second-degree murder, or at least for manslaughter or negligent homicide. *See* A.R.S. § 13-1104(A) (second-degree murder); § 13-1103(A) (manslaughter); § 13-1102(A) (negligent homicide).

"In the context of malicious prosecution, probable cause is defined as a reasonable ground of suspicion, supported by circumstances sufficient to warrant an ordinarily prudent man in believing the accused is guilty of the offense." *Gonzales v. City of Phoenix*, 52 P.3d 184, 187 (Ariz. 2002) (internal quotation marks omitted). "[T]he mere fact a prosecution was unsuccessful does not mean it was not supported by probable cause." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995). According to the allegations of Plaintiff's Complaint, an eyewitness claimed to have seen Plaintiff shoot the decedent in the chest while the decedent was resting on a dirt road. (Doc. 1 at 18 ¶ 67.) Furthermore, Plaintiff gave inconsistent statements to police officers when questioned about what had occurred. (*Id.* at 19 ¶ 71.) These circumstances are sufficient to warrant an ordinarily prudent individual in believing Plaintiff guilty of first- or second-degree murder. *See* A.R.S. § 13-1105(A) (first-degree murder); § 13-1104(A) (second-degree murder). Plaintiff argues that eyewitness D.R.R.'s testimony was inconsistent with physical evidence found at the scene (Doc. 35 at 10, 15), but while these arguments could create reasonable doubt in the minds of one or more jurors at trial, "probable cause can well exist (and often does) even though ultimately, a jury is not persuaded that there is proof beyond a reasonable doubt." *Yousefian*, 779 F.3d at 1014.

Given the existence of probable cause for Plaintiff's arrest and prosecution, the Court will grant Defendants' Motions to Dismiss with respect to Counts One, Two, and Four of the Complaint.[4]

## 2. Conditions of Pretrial Confinement

Count Three asserts a due process claim under the Fourteenth Amendment alleging that Plaintiff was subjected to punishment as a pretrial detainee. (Doc. 1 at 23 ¶¶ 89-93.)

---

[4] Because the existence of probable cause is fatal to these counts, the Court declines to address the other arguments raised by Defendants concerning these counts.

1    Defendants argue that Plaintiff fails to plausibly state a claim because he does not allege

2    facts showing that Commander Marquez "personally participated in the alleged conduct,

3    acted with deliberate indifference, or disregarded a substantial risk of serious harm." (Doc.

4    28 at 17.)  Plaintiff does not address these arguments in his Response to Defendants'

5    Motions to Dismiss.  (*See* Doc. 35.)

6         Plaintiffs' Complaint challenges actions taken by unnamed detention officers at the

7    Santa Cruz County jail and alleges that "Commander John Marquez" was "in charge of the

8    treatment" that Plaintiff received while in the jail.  (Doc. 1 at 14-15, 23 ¶¶ 61, 90-92.)

9    However, Plaintiff does not allege any specific actions taken by Commander Marquez.

10   "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that

11   each Government-official defendant, through the official's own individual actions, has

12   violated the Constitution." *Iqbal*, 556 U.S. at 676.  Because Plaintiff does not attribute any

13   allegedly unconstitutional actions to any named defendants with respect to Count Three,

14   the Court will grant Defendants' Motions to Dismiss with respect to that count.

### 3. Leave to Amend

16        "If a complaint is dismissed for failure to state a claim, leave to amend should be

17   granted unless the court determines that the allegation of other facts consistent with the

18   challenged pleading could not possibly cure the deficiency."  *DeSoto v. Yellow Freight*

19   *Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (internal quotation marks omitted).  Given the

20   liberal standards governing leave to amend, the Court will dismiss Plaintiff's Complaint

21   without prejudice and with leave to amend.

22        **IT IS ORDERED** that Plaintiff's Motion to Amend Response (Doc. 40) is **denied**.

23   Plaintiff's Amended Response (Doc. 41), which was filed without leave of Court and in

24   violation of CM/ECF Manual § II(H), is **stricken** from the docket.

25   . . . .

26   . . . .

27   . . . .

28   . . . .

1      **IT IS FURTHER ORDERED** that Defendants' Motions to Dismiss (Docs. 28, 30)

2 are **granted**. Plaintiff's Complaint (Doc. 1) is **dismissed with leave to amend**. Plaintiff

3 may file an amended complaint within **fourteen (14) days** of the day this Order is filed. If

4 Plaintiff fails to file an amended complaint within fourteen days, then the Clerk of Court

5 shall dismiss this action with prejudice and enter judgment accordingly.

6      Dated this 5th day of January, 2026.

7

8

9

10                    _____

11                    Honorable Rosemary Márquez
                    United States District Judge