**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| George Alan Kelly,<br>Plaintiff,<br>v.<br>County of Santa Cruz, et al.,<br>Defendants. | No. CV-25-00040-TUC-RM<br>**ORDER** |

Pending before the Court are Motions to Dismiss filed by Defendants Santa Cruz County and George Silva ("County Defendants") (Doc. 50), and by Defendants David Hathaway, Jorge Ainza, Mario Barba, Joseph Bunting, Cristobal Castaneda, Alfonso Flores, Lluvia Garcia, Rafael Lopez, John Marquez, and Omar Rodriguez ("Sheriff's Department Defendants") (Doc. 51).[1] For the following reasons, the Motions to Dismiss will be granted.

## I. Procedural History

Plaintiff George Alan Kelly initiated this action on January 30, 2025, raising claims under 42 U.S.C. § 1983 arising from his arrest and prosecution for murder. (Doc. 1.) Defendants moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Docs. 28, 30.) On January 5, 2026, this Court granted the Motions to Dismiss and dismissed Plaintiff's Complaint with leave to amend. (Doc. 44.) Plaintiff thereafter filed a First Amended Complaint ("FAC") (Doc. 45), and Defendants again

[1] The Sheriff's Department Defendants join in arguments raised in the County Defendants' Motion. (Doc. 52.)

moved to dismiss under Rule 12(b)(6) (Docs. 50, 51).

## II. First Amended Complaint

Plaintiff alleges the following in his FAC.[2]

Plaintiff and his wife ("the Kellys") own a ranch located approximately two miles from the United States-Mexico border in Santa Cruz County, Arizona. (Doc. 45 at 6 ¶ 30.) During the years prior to the incident giving rise to this lawsuit, the Kellys observed an increasing number of armed individuals crossing their property while trafficking drugs from Mexico to the United States, in addition to armed groups known as RIP crews who would rob drug traffickers. (*Id.* at 7 ¶¶ 33-34.) On two occasions, armed trespassers shot at Plaintiff; during the first incident, Plaintiff was unarmed and took cover, and during the second he was armed and fired his AK-47 into the air to scare the trespassers away. (*Id.* at 7 ¶ 35-36.)

On January 30, 2023, the Kellys were on their property when they saw a group of men with large backpacks and guns, and Plaintiff heard a gunshot. (*Id.* at 7-8 ¶¶ 37-38.) Plaintiff took his rifle to the back patio of his property and fired approximately eight shots into the air to scare the men off his property. (*Id.* at 8 ¶ 39.) Plaintiff then called 911 and the Border Patrol, and officers responded and walked the property with Plaintiff and his dogs. (*Id.* at 8 ¶ 40.) Several hours later, Plaintiff discovered the deceased body of Mr. Buitimea. (*Id.* at 9 ¶¶ 43, 45.) Mr. Buitimea's body was found in a location that Plaintiff and the officers had searched earlier, and the body had not been there during the earlier search. (*Id.* at 8-9 ¶¶ 40-41, 43.) Mr. Buitimea was dressed in camouflage, including tactical boots, and he had a radio; an empty, unzipped fanny pack that had been forcibly torn from his body; and a large, empty, unzipped backpack that had been pulled over his head. (*Id.* at 9 ¶ 46.) The condition of the body indicated that Mr. Buitimea was involved in drug or human trafficking and had been robbed by a RIP crew either before or after he

[2] Plaintiff's FAC repeats the allegations of the original Complaint and adds additional allegations. (*Compare* Doc. 1, *with* Doc. 45.) The Court detailed the allegations of the original Complaint in its January 5, 2026 Order. (Doc. 44.) Here, the Court briefly summarizes the reiterated allegations and discusses the newly added allegations in more depth.

had been shot. (*Id.* at 9 ¶¶ 46-47.)

Upon finding Mr. Buitimea's body, Plaintiff called 911 and the Border Patrol. (*Id.* at 9 ¶ 48.) Deputies from the Cochise County Sheriff's Department, as well as attorneys Kimberly Hunley and George Silva from the County Attorney's Office, arrived on scene to investigate. (*Id.* at 9-10 ¶¶ 48-49.) The Kellys told the deputies what they had seen earlier in the day and how they had reacted, including that Plaintiff had used his AK-47 to fire shots into the air from his back patio. (*Id.* at 10 ¶¶ 50-51.) Even though Plaintiff was forthright and helpful, and the evidence indicated Mr. Buitimea had been killed by a RIP crew rather than by Plaintiff shooting from his porch, deputies arrested Plaintiff within minutes of their arrival and booked him for first-degree murder, falsely stating on the booking form that Plaintiff had admitted to firing shots at multiple subjects. (*Id.* at 9-11, 13 ¶¶ 47, 52-58, 68.)

Plaintiff was held in jail for 23 days before being released on a one-million-dollar bond. (*Id.* at 16 ¶¶ 79-80.) He was placed in general population despite obvious dangers, and detention officers denied him medication, a mattress, and a pillow. (*Id.* at 16 ¶ 79.) Defendant John Marquez was in charge of the treatment Plaintiff received in jail. (*Id.*)

During a probable cause hearing held on February 24, 2023, the prosecution presented obviously perjured testimony from eyewitness D.R.R. (*Id.* at 19-20 ¶¶ 84-86.) Plaintiff's criminal trial took place from March 22, 2024, to April 19, 2024, and it resulted in a mistrial after the jury was unable to reach a verdict. (*Id.* at 20 ¶ 91.) Following the mistrial, the prosecution moved to dismiss the case without prejudice, but the state court dismissed the case with prejudice in the interest of justice. (*Id.* at 21 ¶ 92.)

Plaintiff contends that Santa Cruz County Sheriff David Hathaway decried ranchers who claimed there was a border crisis; that Hathaway publicly labeled Plaintiff a racist, extremist vigilante; and that Plaintiff's arrest and prosecution were intended to make an example of Plaintiff with other ranchers in the area who were complaining about the increase in dangerous border activity. (*Id.* at 5, 13, 16 ¶¶ 23, 66, 81.)

Plaintiff raises four causes of action under 42 U.S.C. § 1983. (*Id.* at 22-24 ¶¶ 97-

116.) First, Plaintiff alleges that all Defendants violated his Fourth and Fourteenth Amendment rights to be free from false arrest, unlawful seizure, and unlawful prosecution. (*Id.* at 22 ¶¶ 97-101.) Second, he alleges that all Defendants conspired to violate his rights to be free from false arrest, unlawful seizure, and unlawful prosecution. (*Id.* at 22-23 ¶¶ 102-107.) Third, he alleges a violation of his Fourteenth Amendment right to be free from punishment as a pretrial detainee. (*Id.* at 23 ¶¶ 108-112.) Fourth, he alleges a municipal liability claim against Santa Cruz County pursuant to *Monell v. Department. of Social Services*, 436 U.S. 658 (1978). (*Id.* at 23-24 ¶¶ 113-116.) Plaintiff seeks $50 million in damages for emotional, physical, reputational, and economic harm, as well as $100 million in exemplary damages. (*Id.* at 24-25 ¶¶ 117-120.)

**III. Defendant Kimberly Hunley**

On April 21, 2025, Plaintiff filed proof of service as to Defendant Hunley, stating that the summons was served on a Legal Support Supervisor at the Santa Cruz County Complex in Nogales, Arizona. (Doc. 16.)[3] However, there is no dispute that Hunley is no longer an employee of Santa Cruz County. (*See* Doc. 30 at 1-2 n.2; Doc. 45 at 3 ¶ 14; Doc. 50 at 1-2 n.2.) The County Defendants aver that they provided notice to Plaintiff's counsel—via email on May 14, 2025—that the attempted service of process on Hunley was ineffective because Hunley is no longer a Santa Cruz County employee and the Legal Support Supervisor had no authority to accept service on her behalf. (Doc. 30 at 1-2 n.2; Doc. 50 at 1-2 n.2.) The County Defendants also raised the issue of ineffective service of process on Hunley both in their Motion to Dismiss Plaintiff's original Complaint (Doc. 30 at 1-2 n.2) and in their Motion to Dismiss the FAC (Doc. 50 at 1-2 n.2). Plaintiff failed to address the issue in response to either Motion. (*See* Docs. 35, 58.) To date, Hunley has not appeared in this action.

Pursuant to Federal Rule of Civil Procedure 4(m), if a defendant is not served within 90 days after the complaint is filed, the Court "must dismiss the action without prejudice

[3] The Court takes judicial notice that the address at which service was attempted, 2150 N. Congress Dr., Nogales, AZ, is the address of the Santa Cruz County Complex. *See* Fed. R. Evid. 201 (a court may judicially notice a fact not subject to reasonable dispute).

against that defendant or order that service be made within a specified time." The Court "must extend the time for service for an appropriate period" if the plaintiff shows good cause for the failure to effect service of process. Fed. R. Civ. P. 4(m).

Plaintiff named Hunley in his original Complaint, which he filed over 500 days ago. Plaintiff has never sought an extension of the deadline for serving Hunley. Plaintiff's FAC concedes that Hunley is no longer employed by Santa Cruz County and that she has not been properly served. Whereas the original Complaint alleged that Hunley "is" a county attorney for Santa Cruz County (Doc. 1 at 4 ¶ 14), the FAC alleges that she "was" a county attorney (Doc. 45 at 3 ¶ 14). Furthermore, the FAC alleges that all other Defendants have been served, but states that Hunley "may be served with process at 2150 N. Congress Dr., Nogales AZ 85621." (Doc. 45 at 3 ¶ 14.) The address cited is the same address at which service on Hunley was previously attempted—the address for the Santa Cruz County Complex—and because Hunley is no longer an employee of Santa Cruz County, there is no reasonable likelihood that Plaintiff will be able to serve her at that address.

Because the deadline for serving Hunley expired over a year ago and Plaintiff has never sought an extension of that deadline or established good cause for his failure to effect service of process, and because there is no indication that Plaintiff is reasonably likely to serve Hunley if the time for service were extended, the Court will dismiss Hunley without prejudice for failure to serve.

## IV. Motions to Dismiss

### A. Legal Standard

Dismissal of a complaint, or any claim within it, for failure to state a claim under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint need not include "detailed factual allegations," it must contain more than labels, conclusions, "and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

In evaluating a Rule 12(b)(6) motion to dismiss, the court must take as true all well-pleaded factual allegations of the complaint and construe them in the light most favorable to the nonmovant. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, the court need not accept as true legal conclusions that are couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A court generally cannot consider evidence outside the pleadings in ruling on a Rule 12(b)(6) motion, but the Court may consider "certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).

**B. Discussion**

The County Defendants argue: (1) Plaintiff's malicious prosecution claim against Silva must be dismissed because the FAC does not allege that Silva personally participated in any alleged constitutional violations, because Silva is entitled to absolute prosecutorial immunity, because Plaintiff cannot show the absence of probable cause, and because the FAC does not adequately plead malice or a purpose to deprive Plaintiff of a federal constitutional right; (2) the conspiracy claim fails under the intracorporate conspiracy doctrine, for lack of an underlying constitutional violation, and because the FAC does not allege that Plaintiff was part of a protected class; and (3) the *Monell* claim fails for lack of an underlying constitutional violation and because the FAC does not plead more than conclusory assertions of a custom or policy of Santa Cruz County that was the moving force behind the alleged constitutional violations. (Doc. 50 at 9-18.) The Sheriff's Department Defendants argue (1) the existence of probable cause is fatal to Plaintiff's

claims for false arrest, false imprisonment, and malicious prosecution; (2) the Sheriff's Department Defendants are entitled to qualified immunity; (3) the FAC fails to allege how all Sheriff's Department Defendants were involved in Plaintiff's arrest or pretrial confinement; (4) Plaintiff's allegation that Commander Marquez oversaw jail operations is insufficient to impose constitutional liability onto Marquez; and (5) no factual allegations support Plaintiff's conspiracy claim. (Doc. 51 at 9-18.)

**1. Probable Cause**

The Court's January 5, 2026 Order focused on the issue of probable cause, as the existence of probable cause is an absolute defense to false arrest, false imprisonment, and malicious prosecution claims. (Doc. 44 at 8.) The Court found that Plaintiff's Complaint failed to plausibly allege a lack of probable cause for Plaintiff's arrest and prosecution, but the Court declined to give preclusive effect to the probable cause findings made during Plaintiff's state-court criminal proceedings. (*Id.* at 8-13.) The Court recognized that some of the elements of issue preclusion under Arizona law are satisfied, in that Plaintiff had a full opportunity to litigate the existence of probable cause for his arrest and prosecution during his criminal proceedings, and the issue was actually litigated during those proceedings. (*Id.* at 10-11.) However, the Court questioned whether the criminal proceedings resulted in a final judgment for purposes of the doctrine of issue preclusion, and whether the probable cause findings were essential to that judgment. (*Id.* at 11.) The Court granted Defendants leave to re-assert arguments concerning issue preclusion. (*Id.* at 12 n.3.)

Plaintiffs' FAC adds new allegations in an effort to establish a lack of probable cause for Plaintiff's arrest and prosecution. (*See generally* Doc. 45.) However, in their Motions to Dismiss, Defendants re-assert their arguments that Plaintiff cannot establish a lack of probable cause because the probable cause findings made during his state-court criminal proceedings are entitled to preclusive effect in this civil action. (Doc. 50 at 13-15; Doc. 51 at 13-16.) Defendants argue that all elements of issue preclusion—including the requirement that the prior probable cause findings be essential to a final judgment—are

satisfied here. (Doc. 50 at 13-15; Doc. 51 at 13-16.) The County Defendants also argue that a finding of probable cause at a preliminary hearing is only reviewable in a subsequent civil proceeding when a plaintiff alleges that officers engaged in judicial deception. (Doc. 50 at 13.)

As the Court recognized in its January 5, 2026 Order, the doctrine of "[i]ssue preclusion, also known as collateral estoppel, bars the relitigation of issues actually adjudicated in previous litigation." *Janjua v. Neufeld*, 933 F.3d 1061, 1065 (9th Cir. 2019) (internal quotation marks omitted). State law governs whether issue preclusion applies "to a state court judgment in a federal civil rights action." *Mills v. City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019). However, "Arizona courts apply the same issue preclusion test as federal courts." *Quinn v. Cardenas*, 535 P.3d 921, 928 (Ariz. App. 2023). Issue preclusion applies when (1) an "issue or fact to be litigated was actually litigated in a previous suit," (2) "a final judgment was entered," (3) "the party against whom the doctrine is to be invoked had a full opportunity to litigate the matter and actually did litigate it," and (4) the "issue or fact was essential to the prior judgment." *Chaney Bldg. Co. v. City of Tucson*, 716 P.2d 28, 30 (Ariz. 1986).[4]

The Court finds that Plaintiff has waived any argument that his state criminal proceedings did not result in a final judgment for purposes of issue preclusion, and that he has further waived any argument that the probable cause findings made during the criminal proceedings were not essential to the judgment. *See Blake v. Canoo Inc.*, 807 F. Supp. 3d 1061, 1082 (C.D. Cal. Oct. 22, 2025) (a party's failure to respond to an argument raised in a motion to dismiss is tantamount to a concession on that issue). The Court put the parties on notice of its concerns regarding these elements in its January 5, 2026 Order (Doc. 44 at 11), and Defendants raised arguments concerning these elements in their Motions to Dismiss (Doc. 50 at 14-15; Doc. 51 at 14-16). Nevertheless, Plaintiff failed to address these elements or raise any arguments concerning them in his Response to the Motions to Dismiss, instead conceding that the probable cause findings made during his state-court

[4] Common identity of the parties is not required when issue preclusion is used defensively in a civil action. *See Campbell v. SZL Props., Ltd.*, 62 P.3d 966, 968 (Ariz. App. 2003).

criminal proceedings establish "prima facie evidence of probable cause." (Doc. 58 at 14.) Based on the arguments in the parties' briefs, the Court finds that the issue of probable cause was actually litigated in Plaintiff's state-court criminal proceedings, that a final judgment was entered in those proceedings, that Plaintiff had a full opportunity to litigate the issue of probable cause and did litigate it, and that the issue of probable cause was essential to the prior judgment. *Cf. Ludwig v. Arizona*, 790 F. App'x 849, 851-53 (9th Cir. 2019); *Haupt v. Dillard*, 17 F.3d 285, 288-290 (9th Cir. 1994).

Plaintiff argues that the state-court probable cause findings are not conclusive in this action because fabricated testimony from purported eyewitness D.R.R. was presented during his state-court preliminary hearing. (Doc. 58 at 14-15.) As this Court previously noted, however, even if the probable cause finding made at Plaintiff's preliminary hearing is not entitled to preclusive effect due to the presentation of allegedly false testimony by D.R.R., Plaintiff's argument fails to address the additional probable cause findings made during his state-court criminal proceedings. (Doc. 44 at 10-11.) As this Court previously observed, the state trial court reviewed the preliminary hearing probable cause finding and affirmed the finding even when disregarding D.R.R.'s testimony. (Doc. 50-1 at 220 (non-electronically filed exhibit).)[5] Furthermore, at a suppression hearing, the state trial court found probable cause for Plaintiff's arrest based solely on the information known to officers at the time of the arrest, which did not include any statements by D.R.R. (Doc. 50-1 at 221 (non-electronically filed exhibit).) Given these additional findings of probable cause for Plaintiff's arrest and prosecution—findings that are independent of D.R.R.'s challenged testimony—Plaintiff cannot show that his "arrest and detention would not have occurred" but for Defendants' "deliberate falsehood or reckless disregard for the truth." *Nieves Martinez v. United States*, 997 F.3d 867, 879-80 (9th Cir. 2021) (probable cause finding not reviewable in subsequent civil proceeding absent elements of judicial deception claim) (internal quotation and alteration marks omitted).

---

[5] The Court may consider these rulings in evaluating Defendants' Rule 12(b)(6) Motions because they are appropriate subjects of judicial notice. *See Ritchie*, 342 F.3d at 908; *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007).

Upon evaluation of the arguments raised in the parties' briefs, the Court finds that the probable cause findings made during Plaintiff's state-court criminal proceedings are entitled to preclusive effect. Accordingly, there was probable cause for Plaintiff's arrest and prosecution, and Plaintiff cannot prove his claims for false arrest, false imprisonment, and malicious prosecution. *See Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015) (the absence of probable cause is a necessary element of § 1983 false arrest and malicious prosecution claims); *Cota v. Penzone*, No. CV-18-02535-PHX-RM, 2019 WL 415703, at *5 (D. Ariz. Feb. 1, 2019) (the existence of probable cause is fatal to false arrest and false imprisonment claims). The Court will accordingly dismiss with prejudice Plaintiff's § 1983 claims for false arrest, false imprisonment, and malicious prosecution.

**2. Personal Involvement in Alleged Constitutional Violations**

There are additional deficiencies in the claims asserted in the FAC. To state a claim under § 1983, a plaintiff must allege facts plausibly showing that each defendant personally participated in an alleged constitutional violation. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Here, as Defendants argue (Doc. 50 at 9; Doc. 51 at 17-18), Plaintiff's FAC impermissibly lumps Defendants together without specifying how each individual Defendant was personally involved in any alleged constitutional violations.

For example, the FAC names Bunting and Rafael Flores as Defendants but makes no factual allegations concerning any actions taken by those individuals. (*See generally* Doc. 45.) The FAC alleges that Defendants Rodriguez, Alfonso Flores, and Silva arrived at the scene after Plaintiff's discovery of the body of Mr. Buitimea, but there are no allegations concerning any allegedly unconstitutional actions taken by those Defendants. (*See id.* at 9-10 ¶¶ 48, 49.) The FAC contends that Silva became directly involved in the investigation leading to the decision to arrest and charge Plaintiff (*id.* at 10 ¶ 49), but this conclusory assertion, devoid of any supporting facts, is not entitled to a presumption of truth. *See Ashcroft*, 556 U.S. at 678 ("naked assertions devoid of further factual enhancement" are insufficient (internal quotation and alteration marks omitted)). Furthermore, the mere fact that Silva arrived at the scene of the investigation, without more,

is insufficient to establish that Silva engaged in "investigative functions normally performed by a detective or police officer," *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993), as opposed to engaging in conduct "intimately associated with the judicial phase of the criminal process," *Imbler v. Pactman*, 424 U.S. 409, 430 (1976). Accordingly, the FAC also fails to establish that Silva's conduct falls outside the bounds of absolute prosecutorial immunity.

The FAC alleges only that Defendant Castaneda and other officers walked Plaintiff's property with Plaintiff and his dogs prior to the discovery of Mr. Buitimea's body. (*Id.* at 8 ¶ 40.) Plaintiff fails to explain how walking the property with him violated his constitutional rights. The FAC alleges only that Defendant Barba interviewed Plaintiff and his wife after the discovery of the body. (*Id.* at 11-12 ¶¶ 57, 61.) Although Plaintiff alleges that officers lied to him during their interview of him (*id.* at 11-12 ¶ 61), he does not raise any claims premised on an unconstitutional interrogation, and the FAC includes no other facts relating to Defendant Barba's involvement in the decisions to arrest, charge, and prosecute Plaintiff.

Accordingly, Defendants Bunting, Rafael Flores, Alfonso Flores, Rodriguez, Silva, Castaneda, and Barba, are entitled to dismissal not only because Plaintiff cannot establish a lack of probable cause for his arrest and prosecution, but also because the FAC fails to allege facts plausibly showing that these Defendants were personally involved in any alleged constitutional deprivations.

**3. Conspiracy**

There appears to be some confusion as to whether the FAC asserts a conspiracy claim under 42 U.S.C. § 1983 or § 1985. The FAC refers to § 1983 only (Doc. 45 at 22-23 ¶¶ 102-107), but the Motion to Dismiss filed by the County Defendants (Doc. 50 at 16-17) and Plaintiff's Response thereto (Doc. 58 at 18-19) address whether a conspiracy claim was adequately pled under § 1985.

"Conspiracy is not itself a constitutional tort under § 1983," and allegations of a conspiracy do "not enlarge the nature of the [§ 1983] claims asserted by the plaintiff, as

there must always be an underlying constitutional violation." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 935 (9th Cir. 2012). Because Plaintiff has failed to allege an underlying constitutional violation for false arrest, false imprisonment, or malicious prosecution, Plaintiff has also failed to allege a § 1983 conspiracy. *See Hart v. Parks*, 450 F.3d 1059, 1069, 1071-72 (9th Cir. 2006) (conspiracy claim fails absent an underlying constitutional violation).

To the extent Plaintiff is attempting to raise a claim for conspiracy under 42 U.S.C. § 1985, "the absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations." *Caldeira v. Cnty. of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989). Furthermore, to state a claim for conspiracy under § 1985, a plaintiff must allege that the defendants' actions were motivated by a discriminatory animus based on a suspect or quasi-suspect class. *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992). The FAC alleges that Hathaway "decried ranchers who claimed that there was" a border crisis, and that Defendants' prosecution was "based upon malice to make an example of [Plaintiff] with the other ranchers on the border who had complained about the influx of dangerous immigrant activity." (Doc. 45 at 5, 13 ¶¶ 23, 66.) But a group of ranchers complaining of a border crisis does not constitute a protected class for purposes of § 1985. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993) ("a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors" does not constitute a protected class for purposes of the statute). Finally, a conspiracy under § 1985 requires that "two or more persons . . . conspire," 42 U.S.C. § 1985(3), and Santa Cruz County and its employees are "'considered to constitute a single legal entity that cannot conspire with itself[.]'" *Dains v. Maricopa Cnty.*, No. 2:07-cv-2606-HRH, 2009 WL 10673606, at *7 (D. Ariz. Jan. 12, 2009) (quoting *Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 768 (11th Cir. 2000)).

Accordingly, Plaintiff's conspiracy claim will be dismissed. Because the existence of probable cause precludes Plaintiff from stating a viable conspiracy claim, and because

Plaintiff has failed to cure the defects of this claim after amendment, the Court will dismiss the conspiracy claim with prejudice.

**4. *Monell* Liability**

A governmental entity may be held liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]" *Monell*, 436 U.S. at 694. Municipal policy includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Plaintiff cannot establish *Monell* liability without establishing an underlying constitutional injury. *See City of Los Angeles v. Heller*, 475 U.S 796, 799 (1986). As discussed above, Plaintiff cannot establish an underlying constitutional injury because he cannot establish a lack of probable cause for his arrest and prosecution. Accordingly, Plaintiff's *Monell* claim will be dismissed with prejudice.

**5. Conditions of Pretrial Confinement**

In its January 5, 2026 Order, the Court dismissed Plaintiff's claim alleging unconstitutional conditions of pretrial confinement claim because vicarious liability is inapplicable to § 1983 suits, and Plaintiff's Complaint alleged only that Defendant Marquez was in charge of the treatment Plaintiff received while in pretrial confinement, without attributing any allegedly unconstitutional actions to Marquez or to any other named defendants. (Doc. 44 at 14.)

Plaintiff's FAC makes no attempt to cure these defects, again alleging only actions taken by unnamed detention officers who were supervised by Marquez. (Doc. 45 at 3, 16 ¶¶ 13, 79.) Furthermore, Plaintiff does not respond to the County Sheriff Defendants' argument that the FAC's allegation that Marquez oversaw jail operations is insufficient to impose constitutional liability. (Doc. 51 at 18; *see* Doc. 58.)

Because a § 1983 claim against Marquez cannot be premised on a theory of vicarious liability, and because Plaintiff has not alleged that any named Defendant was

personally involved in the treatment he received while in pretrial confinement, the Court will dismiss Count 3 of Plaintiff's FAC and Defendant Marquez. Because Plaintiff has had an opportunity to cure the defects in this claim but has failed to do so, and because Plaintiff's Response does not indicate that Plaintiff is able do so, the Court will dismiss Count 3 and Defendant Marquez with prejudice.

**IT IS ORDERED** that Defendants' Motions to Dismiss (Docs. 50, 51) are **granted**. Plaintiff's First Amended Complaint (Doc. 45) and this action are **dismissed**. The dismissal is without prejudice as to Defendant Hunley and with prejudice as to all other Defendants. The Clerk of Court is directed to enter judgment in Defendants' favor and close this case.

Dated this 17th day of August, 2026.

Honorable Rosemary Márquez
United States District Judge